IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT C. WOODS,
          Plaintiff,

v.                                  Civil Action No. 3:22cv497

SUSANNA STARR PULLMAN, et al.,
          Defendants.

## OPINION

In this case, the plaintiff dropped his motorboat off at a boatyard in 2014 for repairs and storage. Six years later, the boat still sat on the boatyard's lot. The boatyard's managers had not heard from the plaintiff for years, the charge card he used to pay storage fees had long expired, the plaintiff did not respond to emails about his bill and his boat, and the plaintiff ignored registered letters about the situation. Rightfully concluding that the plaintiff had abandoned his motorboat, the boatyard followed a statutory procedure and took title to the boat. At some point, the plaintiff realized that, as much as he may have once enjoyed motorboating, he enjoyed the sport of litigation more. So the plaintiff sued the boatyard for $350,000 or, at his own election, $6,000 per day for the loss of use of the landlocked boat. This claim is sunk.

This matter comes before the Court on the parties' cross-motions for summary judgment. As noted above, this case arises from a boat and jet ski that the plaintiff, Robert Woods ("Woods"), stored at the Deltaville Boatyard ("DBY"). Woods alleges that the defendants, DBY, its owner (Keith Ruse, or "Ruse"), an employee (Starr Pullman), and that employee's husband (Tony Pullman) took possession of the boat and jet ski under false pretenses. Woods alleges multiple claims against the defendants and seeks summary judgment on Counts One (conversion) and Three (breach of contract). The defendants seek summary judgment on all counts.

As discussed above, the record shows that Woods left his boat and jet ski at DBY for over six years, starting in 2014, and stopped paying his storage bills at the end of 2019. DBY followed Virginia's Abandoned Boat Statute ("ABS") to gain title of the boat, which it later transferred. Unfortunately, however, DBY did not comply with the ABS to gain title of the jet ski. Accordingly, the Court will grant the defendants' motion in full as to the boat, grant the defendants' motion on Counts Two through Six as to the jet ski, and grant the plaintiff's motion on Count One as to the jet ski. The Court will order supplemental briefing as to damages on Count One for the jet ski.

This is a relatively simple case involving a statutory procedure to obtain title to a motorboat. Nonetheless, plaintiff's counsel has conducted the litigation as though the parties had billions of dollars at stake. Depositions went on for days. Dozens of subpoenas went out to banks and other entities. The parties filed numerous discovery motions. After learning of the plaintiff's abusive tactics in questioning witnesses, the Court took the extraordinary step of ordering depositions to occur in its jury room. The Court has not determined whether to award sanctions in connection with the discovery motions and will order the parties to address those discovery issues in subsequent briefing. In addition, the Court directs the parties to address whether plaintiff's counsel has "multiplie[d] the proceedings in [this] case unreasonably and vexatiously," authorizing the court to require counsel to personally satisfy the excess costs, expenses, and attorney's fees incurred by the defendants. 28 U.S.C. § 1927.

## I. UNDISPUTED MATERIAL FACTS

In June 2014, Woods brought his boat to DBY for repairs.  He gave DBY his contact information (an email address, a cell phone number, and an address[1]) and showed a DBY employee his Florida driver's license.  Woods had a jet ski aboard the boat and left both with DBY.  In December 2014, Woods agreed to store the repaired boat at DBY.  After completing the repairs, DBY wrapped the boat in plastic sheeting for dry storage.

At that time, DBY had yard rules and storage rules (collectively, the "DBY Rules") that listed remedies DBY could take in the event of a breach of an agreement for repairs or storage. Woods never retrieved the boat.[2]  In August 2017, DBY called Woods to complete a recurring payment authorization form.  This agreement allowed DBY to charge Woods's card each month for the $200 storage fee and required Woods to update his payment information within 15 days of any changes.  The form indicated the card expired in January 2020.  Woods never updated the payment information.

In January 2020, DBY emailed Woods asking for a new payment method.  In February 2020, DBY left voicemails for Woods, stating his card no longer worked.  Woods did not respond.[3] DBY sent monthly email invoices to Woods that showed a growing balance.  In April 2020, DBY

---

[1] Woods provided the address for a house he rented at 1800 Flowerdew Hundred Road, Prince George, Virginia (the "Flowerdew address").  (ECF NO. 104, at 4.)  He concedes he does not remember notifying DBY that he no longer lived at the Flowerdew address after his lease expired.  (ECF No. 88-1, at 98:14–23.)

[2] Woods does not reconcile this undisputed fact with his complaint which asserts that when he "wanted to take his Watercraft out of dry storage, he would do so in mid to late spring, after calling the Boatyard a week in advance to get the Boatyard to haul the Yacht back to Jackson Creek and put the Watercraft in the water so the Watercraft would be ready when the plaintiff visited Virginia."  (ECF No. 1 ¶ 18.)

[3] Woods later testified that he first responded to the voicemails in March 2021.  (ECF No. 88-1, at 121:7–23.)

sent Woods a registered letter at the Flowerdew address. The letter explained that Woods had not paid his storage fees, and DBY intended to apply for title of the boat unless Woods claimed the boat and removed it from DBY within 30 days. The post office returned the registered letter undelivered. DBY then placed a notice for the boat for three weeks in the Southside Sentinel, a local newspaper. In July 2020, Ruse applied to the Department of Wildlife Resources ("DWR") for title of the boat, pursuant to the ABS. In September 2020, DBY sent a registered letter to Woods in Florida. The post office returned it undelivered. DWR then asked the Office of the Attorney General (the "OAG") for guidance on whether DBY's application satisfied the ABS. (ECF No. 83-1, at 1.) The OAG analyzed the matter and concluded "that [DBY] has satisfied the abandoned boat statute's notice requirements by sending registered letters to both addresses it knows of, even though the notice was returned as unclaimed in both cases." (*Id.* at 2.) On October 2, 2020, DWR transferred title of the boat to Ruse. Ruse later sold the boat to Tony Pullman.

After DBY removed the boat's dry storage wrapping in October 2020, it discovered the jet ski. It placed a notice for the jet ski in the Southside Sentinel for three weeks but did not send Woods a registered letter. In February 2021, Ruse applied for title of the jet ski. In March 2021, DWR transferred title of the jet ski to Ruse. Ruse later transferred the jet ski's title to Tony Pullman.

In March 2021, Woods discovered the title transfers and filed suit in this Court in July 2022.[5]

---

[5] Woods first filed suit in Richmond City Circuit Court in early 2022. After that court transferred the case to Middlesex County Circuit Court, Woods nonsuited the case and filed suit in this Court. (ECF No. 13 ¶ 4.) The defendants assert Woods did so to force them to litigate in Richmond, using "venue as a bludgeon." (*Id.* ¶ 3.)

## II. <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In Virginia, an individual "may acquire title to any watercraft abandoned on his land or the water immediately adjacent to his land" after complying with certain notice requirements. Va. Code Ann. § 29.1-733.25(B). "Any watercraft abandoned for a period exceeding 60 days is subject to" this statute in which an "abandoned watercraft means a watercraft that is left unattended on private property for more than 10 days without the consent of the property's owner, regardless of whether it was brought onto the private property with the consent of the owner." *Id.* §§ 29.1-733.25(A), 29.1-733.2. An individual seeking title to an abandoned watercraft must "make a good faith effort to secure the last-known address of all owners and lien holders . . . [and] notify each owner and lien holder by registered letter that if ownership is not claimed and the watercraft not removed within 30 days, he will apply for title." *Id.* § 29.1-733.25(C). The individual must also "place a notice, to appear for three consecutive issues, in a newspaper of general circulation in the county or city where the watercraft is located" that "describe[s] the watercraft, its location, and any identifying number." *Id.* § 29.1-733.25(D). After the thirty-day notice period ends, the individual may apply for title. When an individual complies with the statutory process for

5

obtaining title to abandoned personal property, they have not converted the abandoned property. *CB&PB Enters., LLC v. McCants*, 76 Va. App. 407, 418–19, 882 S.E.2d 484, 490 (Va. Ct. App. 2023).

### III. <u>DISCUSSION</u>

#### *A. Conversion (Count One)*

##### *1. <u>The Boat</u>*

The Court will grant the defendants' motion for summary judgment as to the boat because DBY complied with the ABS.  When a party complies with the statutory process to obtain title of abandoned property, that party has not committed conversion.  *Id.* at 418–19, at 490.  DBY withdrew its consent for Woods's boat to stay on its property after Woods failed to pay his storage fees.  Over many months, DBY made good-faith efforts to contact Woods by voicemail, email, and registered letter.  It placed three notices in the Southside Sentinel describing the boat, its location, and the hull number.  It sent a second registered letter to Woods at a different address.  Woods neither claimed the boat nor removed it from DBY.  In October 2020, DWR approved the application and transferred the title to Ruse.  At each step, DBY complied with the ABS.  Woods argues the defendants converted the boat because the ABS does not apply and that, if the ABS does apply, the defendants failed to comply with its requirements.

##### *a. Woods Argues the ABS Does Not Apply*

Woods argues the defendants converted the boat because the ABS does not apply.   Woods says that, because the parties had a bailment, the ABS does not apply.[6]  He has not identified any support for this line of argument.   He relies on a line in DBY's 2017 recurring payment

---

[6] Woods also argues – without support from the statute or caselaw – that the ABS only applies to gratuitous bailments.

authorization form to assert that the bailment would not end until Woods launched his boat. But by failing to pay his storage fees, Woods violated the bailment. A bailment cannot exist without the bailee's consent. *See, e.g., K-B Corp. v. Gallagher*, 218 Va. 381, 385, 237 S.E.2d 183, 186 (1977) (discussing the importance of the "intent to exercise . . . control" over bailed property as critical to the existence of a bailment).[7]

### b. Woods Argues that DBY Did Not Comply with the ABS

Woods next says that DBY did not comply with the ABS in three ways: (1) DBY did not communicate the withdrawal of its consent; (2) the newspaper notice did not satisfy the statutory requirements; and (3) DBY received title to the boat fewer than 30 days from receipt of the second registered letter. First, Woods asserts, without support from the Virginia Code or caselaw, that "DBY could not simply subjectively withdraw its consent to the storage of the plaintiff's Watercraft" and that DBY had a duty to communicate the withdrawal of its consent. (ECF No. 81, at 16.) Through the cumulative weight of its multiple emails, voicemails, and letters, DBY clearly communicated that, without payment, DBY did not consent to storing Woods's boat. The argument that Woods, a savvy and successful capitalist,[8] did not understand this beggars belief and seems intended to disguise the fact that Woods did not regard DBY's emails or listen to DBY's voicemails until after he discovered the title transfer.

Next, Woods argues the newspaper notice did not comply with the ABS because it gave the wrong year of manufacture. This argument lacks merit because the ABS does not require the

---

[7] In a tangential argument, Woods contends that DBY misled the Attorney General by claiming the boat occupied a slip at the marina, and that this somehow influenced the OAG's analysis. As the language of the statute makes clear, the ABS applies both when the abandoned boat sits on dry land and when it rests in the water.

[8] Woods "runs three businesses." (ECF No. 88-1, at 169:16.) He owns approximately fifteen boats, two airplanes, ten luxury vehicles, and four residences. (ECF No. 104, at 3–4.)

notice to include the year of manufacture. DBY complied with the ABS by including the boat's hull number, a description of the boat, and its location in the notice.

Finally, Woods argues DBY did not comply with the ABS because DWR transferred the title on October 2, 2020. His argument relies on the timing of the second registered letter, which DBY sent on September 3, 2020, to Woods's Florida address. Woods argues the October 2, 2020, title transfer occurred one day before the 30-day notice period triggered by the September 3, 2020, letter, and that the transfer therefore did not comply with the ABS. His argument overlooks the first registered letter, which DBY sent in April 2020.

The Court will grant the defendants' motion for summary judgment as to the boat because DBY complied with the ABS and therefore did not convert the boat. The defendants show no genuine dispute of material fact and are entitled to judgment as a matter of law.

## 2. *The Jet Ski*

The Court will grant Woods's motion for summary judgment as to the jet ski because DBY did not comply with the ABS. Although DBY placed a notice for the jet ski in the Southside Sentinel for three weeks, DBY did not send Woods a registered letter about the jet ski. In January 2022, DBY applied for a transfer of the jet ski's title, which the DWR approved. By not sending Woods a registered letter about the jet ski, DBY failed to comply with the ABS. Accordingly, DBY converted the jet ski. The Court will grant Woods's motion for summary judgment as to the jet ski.

Woods seeks compensatory and punitive damages for the jet ski. The Court has seen no evidence entitling the plaintiff to damages or punitive damages but will allow him an opportunity to present evidence and brief these issues.

8

### B. Virginia Consumer Protection Act Violations (Count Two)

The Court will grant the defendants' motion for summary judgment because Woods has not identified a consumer transaction that violates the Virginia Consumer Protection Act (the "VCPA"). The VCPA prohibits, among other practices, "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(A)(14). In his complaint, Woods asserts that DBY violated the VCPA by using the ABS, arguing that the DBY Rules limited DBY's remedies. (ECF No. 1, at 23.) The DBY Rules contain no reference to the ABS and no language limiting its remedies. This evidence plainly contradicts Woods's claim and demonstrates a lack of genuine dispute of material fact. The Court will grant summary judgment to the defendants as a matter of law because Woods establishes no basis for his VCPA claim.

In recent filings, Woods has added new alleged VCPA violations: DBY (1) "sen[t] Mr. Woods an invoice in May 2020 showing that he only had a balance of $200 owed[;] and [(2)] fail[ed] to use good faith in obtaining Mr. Woods' address." (ECF No. 104, at 20.) Woods has cherry-picked his evidence in alleging the invoice violated the VCPA because the record shows that DBY had a practice of sending an email on the first of each month invoicing the $200 storage fee and a second email a few days later showing the full balance. (*See* ECF No. 104-5, at 49–70.) Nevertheless, when a plaintiff alleges a VCPA violation, "inaccuracy does not, on its own, imply fraud." *Marcus v. Dennis*, No. 1:21cv1085, 2022 WL 1527524, at \*9 (E.D. Va. May 13, 2022). Woods has alleged nothing more than an inaccurate invoice in support of this claim.

The Court will not credit Woods's argument that DBY failed to use good faith in finding Woods's addresses. By his own admission, Woods claims he "previously informed DBY he could be at any number of homes throughout the country at any particular time of year." (ECF No. 81,

at 17.) Woods never provided any of these addresses to DBY. For notice in similar actions, the Supreme Court requires "reasonable followup measures" but not "[a]n open-ended search for a new address." *Jones v. Flowers*, 547 U.S. 220, 235–36 (2006). DBY sent a letter to Woods's address in Florida, which he considers his primary residence. Because the defendants have shown no genuine dispute of material fact and that they are entitled to judgment as a matter of law, the Court will grant their motion.

### C. Breach of Contract (Count Three)

The Court will grant the defendants' motion for summary judgment because Woods first breached the parties' implied contract by failing to pay. He concedes that he did not pay storage fees in 2020. (ECF No. 81, at 5.) "If the first breaching party committed a material breach . . . that party cannot enforce the contract." *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 204 (1997). Woods claims he "paid for two years of advance storage in February 2015 and multiple additional payments for many over a year in advance thereafter" to suggest that he had a credit balance with DBY. (ECF No. 104, at 17.) DBY's payment summary shows one payment of $4,800 in February 2015, but no other payments approaching the year in advance payment (or $2,400) Woods claims. (ECF No. 39-1, at 10.) Woods concedes he has no evidence of any advance payments. (ECF No. 88-1, at 233:20–234:1.) Without evidence of advance payments, Woods cannot present a genuine issue of material fact concerning his outstanding balance. The defendants have shown that Woods did not pay his bills and thus breached the contract. Accordingly, the Court will grant the defendants' motion for summary judgment because they are entitled to judgment as a matter of law.

10

### D. Tortious Interference (Count Four)

The Court will grant the defendants' motion for summary judgment because Woods has failed to establish essential elements of tortious interference. *See Celotex Corp.*, 477 U.S. at 322. Because the storage contract did not concern the jet ski, the Court's summary judgment decision on Count One does not affect this analysis.

> In Virginia, the elements of a claim for tortious interference with contractual relations are typically recited as (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Schaecher v. Bouffault*, 290 Va. 83, 106, 772 S.E.2d 589, 602 (2015).

"A person cannot intentionally interfere with his own contract." *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699, 708 (1987). "Since first recognizing a cause of action for tortious interference with a contract . . . [Virginia courts] have made clear that only a party *outside* the contractual relationship with the plaintiff is subject to liability as an interferor." *Francis Hospitality, Inc. v. Read Properties, LLC*, 296 Va. 358, 363, 820 S.E.2d 607, 610 (2018).

Woods makes conclusory claims without factual support. He asserts that Ruse and Starr Pullman intentionally interfered with DBY's contract with Woods. However, as DBY's owner, Ruse acted as a party to the contract. Furthermore, as a DBY employee, Starr Pullman acted as DBY's agent. Neither acted outside the contractual relationship. Woods, therefore, may only assert this claim against Tony Pullman, the only outsider to the contract. But Woods has not alleged that Tony Pullman took any action to interfere with the storage contract or even that he had knowledge of the parties' contractual relationship. The Court will grant the defendants' motion for summary judgment because (1) Ruse and Starr Pullman could not interfere with DBY's

contract, and (2) Woods has made no allegation to support this claim against Tony Pullman. *See Celotex Corp.*, 477 U.S. at 322.

### *E. Conspiracy (Count Five)*

The Court will grant the defendants' motion for summary judgment because the defendants complied with the ABS to obtain title to the boat. "[T]here can be no conspiracy to do a legitimate act, an act which the law allows." *Werth v. Fire Cos. Adjustment Bureau*, 160 Va. 845, 855, 171 S.E. 255, 259 (1933) (internal quotation omitted); *see also Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215, 754 S.E.2d 313, 317 (2014). As discussed above, the defendants complied with the ABS.

In alleging a plot to convert Woods's jet ski, Woods has failed to show a genuine issue of material fact. "[A] factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)). A "plaintiff [can]not defeat the properly supported summary judgment motion of a defendant charged with a conspiracy without offering 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). The defendants have cited multiple parts of the record to support their denial of a conspiracy. (ECF No. 83, at 31–33.) "If the movant satisfies his initial burden to demonstrate 'an absence of evidence to support the nonmoving party's case,' the burden shifts to the nonmovant to 'present specific facts showing that there is a genuine issue for trial.'" *United States v. 8.929 Acres of Land in Arlington Cnty., Va.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting

12

*Humphreys*, 790 F.3d at 540). Woods has not presented any specific facts to demonstrate a genuine issue for trial. Accordingly, the Court will grant the defendants' motion for summary judgment.

### F. Unjust Enrichment (Count Six)

The Court will grant the defendants' motion for summary judgment because the plaintiff has not established the essential elements of the claim. *See Celotex Corp.*, 477 U.S. at 322. "To state a cause of action for unjust enrichment, [the plaintiff] had to allege that: (1) he conferred a benefit on [the defendant]; (2) [the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value." *Schmidt v. Household Finance Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008). The plaintiff has not alleged that he conferred a benefit upon the defendants. Instead, he alleges that the *defendants'* "actions and omissions . . . conferred the plaintiff's Watercraft to the Boatyard, Ruse, and the Pullmans, which was a benefit to them." (ECF No. 1 ¶ 163.) Because Woods has failed to sufficiently establish the existence of an essential element to his claim on which he bears the ultimate burden of proof, the Court will grant the defendants' motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 322.

### IV. CONCLUSION

Because the defendants have established that no genuine dispute of material fact exists as to boat on all counts, the Court will grant their motion because they are entitled to judgment as a matter of law. The Court will grant the plaintiff's motion on Count One as to the jet ski and the defendants' motion on the remaining counts as to the jet ski.

13

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

/s/
John A. Gibney, Jr.
Senior United States District Judge

Date: 26 June 2023
Richmond, VA

14